# EXHIBIT A

1

E90glucp

1    UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
2    -----------------------------x

3    UNITED STATES OF AMERICA

4              v.                        14 MJ 1878(JMF)

5    MICHAEL LUCARELLI,

6                   Defendant.

7    -----------------------------x

8                                        New York, N.Y.
                                         September 24, 2014
9                                        10:40 a.m.

10
     Before:
11
                        HON. JESSE M. FURMAN,
12
                                            District Judge
13

14                          APPEARANCES

15
     PREET BHARARA
16        United States Attorney for the
              Southern District of New York
17   A. DAMIAN WILLIAMS
          Assistant United States Attorney
18
     CUOMO LAW, LLC
19        Attorneys for Defendant
     PATRICK W. MCGINLEY
20   LAURENT B. CHEVALIER

21

22

23

24

25

E90glucp

1          (Case called)

2          THE COURT:  Good morning.

3          I have been advised, Mr. Lucarelli, that you wish to

4    waive indictment and consent to the filing of an information

5    charging you with one count of securities fraud and enter a

6    guilty plea to that charge.

7          Is that correct?

8          THE DEFENDANT:  Yes, your Honor.

9          THE COURT:  Before I accept your guilty plea, I'm

10   going to ask you certain questions to ensure that you are

11   pleading guilty because you are, in fact, guilty.  You do not

12   need to stand; you can remain seated, except in a moment when

13   I'll ask you to stand to take the oath.

14         In any event, I'll ask you these questions to ensure

15   that you are pleading guilty because you are, in fact, guilty

16   and not for some other reason; to ensure that you understand

17   the rights that you would be giving up by pleading guilty; and

18   to ensure that you understand the potential consequences of a

19   guilty plea, including the sentence that could be imposed upon

20   you.

21         It is essential that you understand each of my

22   questions before you answer them.  So if you do not or if you

23   would like to speak with your lawyers at any point for whatever

24   reason, just let me know and either they will explain the

25   question to you or I will explain the question to you.  And, in

E90glucp

1    any event, if you want to speak with them, I'm happy to give

2    you how ever much time you need to do so.

3               Understood?

4               THE DEFENDANT:  Thank you, your Honor.

5               THE COURT:  Before we proceed further, I'd ask my

6    deputy to administer the oath to the defendant.

7               (Defendant sworn)

8               THE COURT:  You are now under oath, Mr. Lucarelli,

9    which means that if you answer any of my questions falsely, you

10   may be subject to prosecution for the separate crime of

11   perjury.

12              Do you understand that?

13              THE DEFENDANT:  Yes.

14              THE COURT:  What is your full name?

15              THE DEFENDANT:  My full, legal name is Michael Anthony

16   Dupree Lucarelli.

17              THE COURT:  How old are you, Mr. Lucarelli?

18              THE DEFENDANT:  As of today, my birthday, I'm 52 years

19   old.

20              THE COURT:  Happy birthday, though this is not how you

21   would like to spend your birthday.  In any event, happy

22   birthday.

23              How far did you go in school?

24              THE DEFENDANT:  Masters in business.

25              THE COURT:  Have you ever been treated or hospitalized

E90glucp

1    for any type of mental illness?

2            THE DEFENDANT:  No.

3            THE COURT:  Are you now or have you recently been

4    under the care of a doctor or a psychiatrist?

5            THE DEFENDANT:  Just a medical doctor, not for

6    psychiatric.

7            THE COURT:  Can you briefly describe the nature of the

8    treatment that you are having or what it's for.

9            THE DEFENDANT:  For the past 20 years, I've suffered

10   from Crohn's disease and anal fissures and other complications.

11   And I've had a resection of intestine taken out in surgery.

12   And I've tried every known drug.  There is no cure and it's

13   quite painful.

14           THE COURT:  Is there anything about those conditions

15   or your treatment for it that would affect your ability to

16   understand what is happening here today?

17           THE DEFENDANT:  No.

18           THE COURT:  Have you ever been treated or hospitalized

19   for any type of addiction, including drug or alcohol addiction?

20           THE DEFENDANT:  No.  Well, I'm currently in a pretrial

21   Narcotic Anonymous program.

22           THE COURT:  Is there anything about your treatment

23   through that program, or the reasons for your being in that

24   program, that would interfere with your ability to understand

25   what is going on here today?

E90glucp

1        THE DEFENDANT:  No.

2        THE COURT:  In the last 48 hours, have you taken any

3   drugs, medicine, pills or had any alcohol?

4        THE DEFENDANT:  No.

5        THE COURT:  You haven't taken any medicine in

6   connection with your medical condition in the last 48 hours?

7        THE DEFENDANT:  No.

8        THE COURT:  Is your mind clear today?

9        THE DEFENDANT:  Yes.

10       THE COURT:  Do you understand what is happening here

11   today?

12       THE DEFENDANT:  Yes.

13       THE COURT:  Mr. McGinley, have you discussed this

14   matter with Mr. Lucarelli?

15       MR. MCGINLEY:  I have, on several occasions.

16       THE COURT:  Does he understand the rights that he

17   would be giving up by pleading guilty?

18       MR. MCGINLEY:  Yes.  We spent much time talking about

19   that.

20       THE COURT:  In your judgment, is he capable of

21   understanding the nature of these proceedings?

22       MR. MCGINLEY:  He is.

23       THE COURT:  Do either counsel have any doubt as to the

24   defendant's competence to waive indictment or enter a plea of

25   guilty this time?

E90glucp

1          MR. WILLIAMS:  No, your Honor.

2          MR. MCGINLEY:  No, your Honor.

3          THE COURT:  On the basis of Mr. Lucarelli's responses

4    to my questions, my observations of his demeanor here in court

5    and the representations of counsel, I find that he is fully

6    competent to enter an informed plea of guilty at this time.

7          Mr. Lucarelli, have you received a copy of the

8    information containing the charge to which you intend to plead

9    guilty?

10         THE DEFENDANT:  Yes.

11         THE COURT:  Have you read it?

12         THE DEFENDANT:  Yes.

13         THE COURT:  Do you waive its public reading or would

14   you like me to read it out loud?

15         THE DEFENDANT:  Waive the public reading.

16         THE COURT:  Have you had enough time to discuss with

17   your lawyers the charge to which you intend to plead guilty and

18   any possible defenses to that charge?

19         THE DEFENDANT:  Yes.

20         THE COURT:  Have your lawyers explained to you the

21   consequences of entering a guilty plea?

22         THE DEFENDANT:  Yes.

23         THE COURT:  Are you satisfied with their

24   representation of you?

25         THE DEFENDANT:  Yes.

E90glucp

1          THE COURT:  I have a waiver-of-indictment form here

2    that appears to have been signed by you dated today,

3    September 24, 2014.  Is that your signature appearing there on

4    that form?

5          I'll have my deputy bring it over and show it to you.

6          THE DEFENDANT:  Yes.

7          THE COURT:  Before you signed that form, did you read

8    it?

9          THE DEFENDANT:  I signed a lot of forms this morning.

10   I may have read it.

11         THE COURT:  I'm happy to hand it back to you.  You can

12   take a moment to read it and then I'll confirm that you have

13   done so.

14         (Pause)

15         THE DEFENDANT:  Okay.

16         THE COURT:  Before you signed that form, did you

17   discuss it with your lawyers?

18         THE DEFENDANT:  Yes.

19         THE COURT:  Did they explain it to you and answer

20   whatever questions you may have had about the form?

21         THE DEFENDANT:  Yes.

22         THE COURT:  Do you understand that you are under no

23   obligation to waive indictment?

24         THE DEFENDANT:  Yes.

25         THE COURT:  Do you understand that if you did not

E90glucp

1   waive indictment and the government wished to prosecute you for
2   the crime charged in the information, that it would have to
3   present that crime to a grand jury which might or might not
4   indict you?
5           THE DEFENDANT:  Yes.
6           THE COURT:  Do you understand that by waiving
7   indictment, you are giving up your right to have this case
8   presented to a grand jury?
9           THE DEFENDANT:  Yes.
10          THE COURT:  Do you understand what a grand jury is?
11          THE DEFENDANT:  I believe it's 12 jurors.  That's
12  about it.  That's all I know.
13          THE COURT:  It is not actually 12 jurors.  It is a
14  body composed of 23 citizens of whom 16 must be present, that
15  is, 16 is a quorum; and it determines whether the government
16  has presented evidence that is sufficient to show probable
17  cause that somebody committed a crime.  And at least 12 people
18  must vote in favor of an indictment in order for an indictment
19  to be returned.
20          Do you understand that?
21          THE DEFENDANT:  Yes.
22          THE COURT:  Do you understand that absent a waiver of
23  your right to be indicted, that the only way you could be
24  charged with a felony in federal court is based on an
25  indictment returned by a grand jury of that sort.

E90glucp

1          Do you understand that?

2          THE DEFENDANT:  Yes.

3          THE COURT:  Do either counsel know of any reason that

4   I should not find that the defendant has knowingly and

5   voluntarily waived his right to be indicted by a grand jury?

6          MR. WILLIAMS:  No, your Honor.

7          MR. MCGINLEY:  No, your Honor.

8          THE COURT:  I find that the defendant has knowingly

9   and voluntarily waived his right to be indicted by a grand jury

10  and I authorize the filing of the information.

11         I'm going to ask my deputy now to bring you a written

12  advice-of-rights form that I have marked as Court Exhibit 1

13  that you appear to have signed and dated last week,

14  September 17.

15         I'll ask you to look at page two and confirm that that

16  is your signature.

17         THE DEFENDANT:  Yes.

18         THE COURT:  Before you signed that form, did you read

19  it?

20         THE DEFENDANT:  Yes.

21         THE COURT:  Before you signed it, did you discuss it

22  with your lawyers?

23         THE DEFENDANT:  Yes.

24         THE COURT:  Did they explain it to you and answer

25  whatever questions you may have had about it?

E90glucp

1          THE DEFENDANT:  Yes.

2          THE COURT:  I will provide that form to the government

3    to retain in its possession after this proceeding.  I'm also

4    going to go over with you many of the same things orally to

5    ensure that you understand the rights that you have and the

6    rights that you are giving up by entering a guilty plea.

7          Once again, if there is anything that you do not

8    understand, let me know and either your lawyers or I can

9    explain it to you more fully.

10         Under the Constitution and laws of the United States,

11   you have the right to plead not guilty to the charge in the

12   information.

13         Do you understand that?

14         THE DEFENDANT:  Yes.

15         THE COURT:  If you did plead not guilty, you would be

16   entitled to a speedy and public trial by a jury on the charge

17   in the information.

18         Do you understand that?

19         THE DEFENDANT:  Yes.

20         THE COURT:  At that trial, you would be presumed to be

21   innocent and you would not have to prove that you were

22   innocent.  Instead, the government would be required to prove

23   your guilt by competent evidence beyond a reasonable doubt

24   before the jury could find you guilty.

25         Do you understand that?

E90glucp

1          THE DEFENDANT:  Yes.

2          THE COURT:  In order to find you guilty, a jury of 12

3   people would have to agree unanimously that you were guilty.

4          Do you understand that?

5          THE DEFENDANT:  Yes.

6          THE COURT:  At that trial, and at every stage of your

7   case, you would be entitled to the assistance of a lawyer.  If

8   you could not afford a lawyer, one would be appointed at public

9   expense, free of cost to you to represent you.

10          Do you understand that?

11          THE DEFENDANT:  Yes.

12          THE COURT:  During a trial, the witnesses for the

13   government would have to come to court and testify in your

14   presence and your lawyers would have an opportunity to

15   cross-examine those witnesses and object to evidence offered by

16   the government against you.  You would also have an opportunity

17   to introduce evidence on your own behalf if you so desired and

18   you would have the right to have subpoenas issued or other

19   process used to compel witnesses to come to court and testify

20   in your defense.

21          Do you understand that?

22          THE DEFENDANT:  Yes.

23          THE COURT:  At a trial, although you would have the

24   right to testify if you chose to do so, you would also have the

25   right not to testify.  And if you chose not to testify, no one,

E90glucp

1    including the jury, could draw any inference or suggestion of

2    guilt from the fact that you did not testify.

3            Do you understand that?

4            THE DEFENDANT:  Yes.

5            THE COURT:  Before trial, you would have an

6    opportunity to seek suppression or exclusion of any evidence

7    that the government would offer against you at trial.

8            Do you understand that?

9            THE DEFENDANT:  Yes.

10           THE COURT:  If you were convicted at a trial, you

11   would have the right to appeal that verdict.

12           Do you understand that?

13           THE DEFENDANT:  Yes.

14           THE COURT:  If you plead guilty, you will also have to

15   give up your right not to incriminate yourself because I may

16   ask you questions about what you did in order to satisfy myself

17   that you are guilty as charged, and you will have to admit and

18   acknowledge your guilt.

19           Do you understand that?

20           THE DEFENDANT:  Yes.

21           THE COURT:  If you plead guilty, and if I accept your

22   plea, you will give up your right to a trial and the other

23   rights that we have just discussed, other than your right to a

24   lawyer which you keep whether or not you plead guilty.  But

25   there will be no trial and I will enter a judgment of guilty

E90glucp

1    and sentence you on the basis of your plea after I have

2    considered a presentence report prepared by the United States

3    Probation Department and any submissions that I get from the

4    lawyers in this case.

5            There will be no appeal with respect to whether you

6    did or did not commit the offense charged in Count One of the

7    information or with respect to whether the government could or

8    could not use the evidence that it has against you.

9            Do you understand all of that?

10           THE DEFENDANT:  One question:  Is probation pretrial

11   services or --

12           THE COURT:  No.  Both are arms of the Court.  Pretrial

13   services supervises defendants in the pretrial period; but

14   after conviction, whether at trial or on a guilty plea,

15   probation is a related office that prepares a presentence

16   report to assist in the process of sentencing and then

17   ultimately supervises defendants who are in either supervised

18   release or probation.

19           Do you understand that?

20           THE DEFENDANT:  Yes.

21           THE COURT:  Even now, as you are entering this plea,

22   you have the right to change your mind, to plead not guilty and

23   to go to trial on the charge in the information.

24           Do you understand that?.

25           THE DEFENDANT:  Yes.

E90glucp

1          THE COURT:  Do you understand each and every one of
2    the rights that I have explained to you?
3          THE DEFENDANT:  Yes.
4          THE COURT:  Are you willing to give up your right to a
5    trial and the other rights that we have discussed?
6          THE DEFENDANT:  Yes.
7          THE COURT:  Do you understand that you are charged in
8    Count One with securities fraud in violation of, among other
9    things, Title 15, United States Code, Section 78j(b) and 78ff.
10         Do you understand that that is the charge?
11         THE DEFENDANT:  Yes.
12         THE COURT:  Mr. Williams, would you please state the
13   elements of that offense.
14         MR. WILLIAMS:  Certainly, your Honor.  There are three
15   elements.  First, that in connection with the purchase or sale
16   of various LHA client securities, that the defendant employed a
17   device, scheme or artifice to defraud or engaged in an act,
18   practice or course of business that operated, or would operate,
19   as a fraud or deceit upon a purchaser or seller of a specified
20   security.
21         Second, that when he engaged in the scheme, that the
22   defendant acted knowingly, willfully and with the intent to
23   defraud his employer LHA, his client or the market.
24         Third, that the mail or an interstate communication
25   facility or facility of a national security exchange was used

E90glucp

1   in furtherance of the scheme to defraud.

2           The government must prove each of these elements

3   beyond a reasonable doubt.

4           THE COURT:  Mr. Lucarelli, do you understand, as

5   Mr. Williams just indicated, that if you were to go to trial,

6   the government would have to prove each of those elements

7   beyond a reasonable doubt before the jury could find you

8   guilty?

9           THE DEFENDANT:  Yes.

10          THE COURT:  Do you understand that the government

11  would also have to prove, albeit only by a preponderance of the

12  evidence, that some act in connection with the crime took place

13  in this district giving rise to venue.

14          Do you understand that?

15          THE DEFENDANT:  Yes.

16          THE COURT:  Let me tell you now about the maximum

17  possible penalties for this crime, and by maximum, I mean the

18  most that could possibly be imposed upon you.  It doesn't

19  necessarily mean that that is the sentence you will receive,

20  but you have to understand that by pleading guilty, you are

21  exposing yourself to a combination of punishments up to the

22  maximum that I'm about to tell you.

23          Do you understand that?

24          THE DEFENDANT:  Yes.

25          THE COURT:  Let me tell you first about the possible

E90glucp

1    restrictions on your liberty.

2            The maximum term of imprisonment for this crime is 20

3    years, which can be followed by up to three years of supervised

4    release.  Supervised release means that you would be subject to

5    supervision by the probation department.  There would be rules

6    of supervised release that you would be required to follow, and

7    if you violate any of those rules, you could be returned to

8    prison to serve additional time without a jury trial and

9    without credit for either the time spent on your underlying

10   sentence or the time spent on postrelease supervision.

11           Do you understand that?

12           THE DEFENDANT:  One second.  Yes.

13           THE COURT:  You should understand that there is no

14   parole in the federal system and that if you were sentenced to

15   prison, you would not be released early on parole.  There is a

16   limited opportunity to earn credit for good behavior, but if

17   you were sentenced to prison, you would have to serve at least

18   85 percent of the time to which you were sentenced.

19           Do you understand that?

20           THE DEFENDANT:  Yes.

21           THE COURT:  In addition to those restrictions on your

22   liberty, the maximum possible punishment also includes certain

23   financial penalties.  First, the maximum allowable fine is the

24   greatest of $5 million, twice the gross pecuniary gain, that

25   is, financial gain derived from the offense, or twice the gross

E90glucp

1    pecuniary loss to someone other than you as a result of the

2    offense.  Second, I can order restitution to any person or

3    entity injured as a result of your criminal conduct.

4            Mr. Williams, is there any restitution at issue here;

5    and if so, does the government have a preliminary calculation

6    of what it would be?

7            MR. WILLIAMS:  Your Honor, at this point, restitution

8    has not been raised by LHA; however, it could come up

9    subsequent to this plea, your Honor.

10           Forfeiture, however, has been fully set forth in the

11   consent preliminary order of forfeiture that your Honor has.

12           THE COURT:  I'll get to that in a moment.

13           Mr. Lucarelli, do you want an opportunity to speak

14   with counsel?

15           THE DEFENDANT:  Yes.  One second.

16           So you're only coming after me for these assets; is

17   that correct?

18           THE COURT:  I'm not coming after you for anything.

19   I'm just advising you what the maximum possible penalties are

20   for the offense to which I understand you're pleading guilty.

21           THE DEFENDANT:  Yes, I understand.

22           THE COURT:  I want to make sure that you understand

23   one aspect of that maximum penalty can be restitution to any

24   person or entity injured as a result of your criminal conduct.

25           Do you understand that?

E90glucp

1        THE DEFENDANT:  Yes.

2        THE COURT:  In addition, I can order you to forfeit

3    all property derived from the offense or used to facilitate the

4    offense.

5        In that regard, I note that in the plea agreement that

6    I understand you have entered into with the government, you

7    admit to the forfeiture allegation with respect to Count One of

8    the information and agree to forfeit to the United States

9    certain property, including $955,000 and change, as well as

10   some specific property, the illegal contents of an options

11   express account.  And that is also set forth in the consent

12   order of forfeiture that has been submitted to me and I believe

13   think you have signed.

14       Is that correct?

15       THE DEFENDANT:  Yes.

16       THE COURT:  Finally, I must order a mandatory special

17   assessment of $100.

18       Do you understand that those are the maximum possible

19   penalties?

20       THE DEFENDANT:  Yes.

21       THE COURT:  Are you a citizen of the United States,

22   Mr. Lucarelli?

23       THE DEFENDANT:  Yes.

24       THE COURT:  Do you understand that by pleading guilty,

25   you may lose certain valuable civil rights to the extent that

E90glucp

1    you have them or could otherwise obtain them now, such as the

2    right to vote, the right to hold public office, the right to

3    serve on a jury and the right to possess any kind of firearm.

4             Do you understand that?

5             THE DEFENDANT:  Yes.

6             THE COURT:  Are you serving any other sentence, either

7    state or federal, or being prosecuted in any other court at

8    this time?

9             THE DEFENDANT:  No.

10            THE COURT:  Do you understand that if your lawyer or

11   anyone else has attempted to predict for you what your sentence

12   will be in this case, that their predictions could be wrong?

13            Do you understand that?

14            THE DEFENDANT:  Yes.

15            THE COURT:  It's important for you to understand that

16   no one, not your lawyer, not the lawyer for the government, no

17   one can give you any assurances or promises as to what your

18   sentence will be and that is because your sentence will be

19   determined by me and by me alone, and I'm not going to do that

20   today.

21            Instead, I will wait until I get the presentence

22   report prepared by the United States Probation Department that

23   I mentioned earlier.  I will do my own independent calculation

24   of how the United States Sentencing Guidelines apply to your

25   case and consider any possible departures from the guidelines

E90glucp

1    range.

2           I will consider any submissions that I get from the

3    lawyers, as well as the factors set forth in the statute that

4    governs sentencing, which is Title 18, United States Code,

5    Section 3553(a).  And I will do all of that before determining

6    and imposing an appropriate sentence on you.

7           Do you understand that?

8           THE DEFENDANT:  Thank you, your Honor and yes.

9           THE COURT:  Have you discussed that process with your

10   lawyers?

11          THE DEFENDANT:  Yes.

12          THE COURT:  Now, even if your sentence is different

13   from what your lawyers or anyone else has told you that it

14   might be, even if it is different from what you expect or hope

15   it to be, and even if it is different from what may be in the

16   written plea agreement that we will talk about in a moment, you

17   will still be bound by your guilty plea and you will not be

18   allowed to withdraw that plea.

19          Do you understand that?

20          THE DEFENDANT:  Yes.

21          THE COURT:  Now, as I mentioned, I understand that

22   there is a written plea agreement that you and your lawyers

23   have entered into with lawyers for the government.

24          Is that correct?

25          THE DEFENDANT:  Yes.

E90glucp

1          THE COURT:  I have the original letter plea agreement

2     here dated September 16, 2014, from assistant United States

3     Attorneys Damian Williams and Brian Blais, addressed to Oscar

4     Michelen at the firm that Mr. McGinley belongs to.

5          Mr. Michelen is another one of your lawyers.  Is that

6     correct?

7          MR. MCGINLEY:  Yes.

8          THE COURT:  I will mark this as Court Exhibit 2 and

9     provide it to the government to retain in its possession after

10    these proceedings.

11         I'll ask my deputy to show you Court Exhibit 2 and ask

12    you to look at the last page where it appears that you have

13    signed and dated it today, but I want to confirm that.

14         THE DEFENDANT:  Yes.

15         THE COURT:  Before you signed the plea agreement, did

16    you read it?

17         THE DEFENDANT:  Yes.

18         THE COURT:  Before you signed it, did you discuss it

19    with your lawyers?

20         THE DEFENDANT:  Yes.

21         THE COURT:  Did they explain it to you and any

22    questions you had about the plea agreement?

23         THE DEFENDANT:  Yes.

24         THE COURT:  Before you signed the plea agreement, did

25    you fully understand it?

E90glucp

1              THE DEFENDANT:  Yes.

2              THE COURT:  One of the features of your agreement with

3     the government is that you and the government have agreed on

4     how the United States Sentencing Guidelines apply to your case.

5              Is that correct?

6              THE DEFENDANT:  Yes.

7              THE COURT:  You should understand that that agreement

8     is binding on you and it is binding on the government, but it

9     is not binding on me.  As I mentioned, I have my own

10    independent obligation to determine the correct guidelines

11    range and to determine an appropriate sentence.

12             I am not suggesting to you that I will come up with a

13    different calculation than the one to which you and the

14    government have agreed, but I could, and even if I did and even

15    if the range I calculate is higher than the range set forth in

16    your agreement with the government, you would still be bound by

17    your guilty plea and you will not be allowed to withdraw your

18    plea.

19             Do you understand that?

20             THE DEFENDANT:  Yes.

21             THE COURT:  Another feature of your plea agreement is

22    that you have agreed to waive your right to appeal or otherwise

23    challenge a sentence within or below the stipulated sentencing

24    guidelines range of 37 to 46 months' imprisonment; that means

25    that if I sentence you to 46 months in prison or anything less

E90glucp

1    than 46 months in prison, you would have no right to appeal or

2    otherwise challenge that sentence.

3             Do you understand that?

4             THE DEFENDANT:  Yes.

5             THE COURT:  Does this written plea agreement

6    constitute your complete and total understanding of the entire

7    agreement between you and the government?

8             THE DEFENDANT:  Yes.

9             THE COURT:  Has anything been left out of the written

10   plea agreement?

11            THE DEFENDANT:  No.

12            THE COURT:  Other than what is written in this

13   agreement and the consent preliminary order of forfeiture, has

14   anyone made any promise to you or offered you any inducement to

15   plead guilty or to sign the plea agreement?

16            THE DEFENDANT:  No.

17            THE COURT:  Has anyone threatened you or forced you to

18   plead guilty or to sign the plea agreement?

19            THE DEFENDANT:  No.

20            THE COURT:  Has anyone made any promise to you as to

21   what your sentence will be?

22            THE DEFENDANT:  No.

23            THE COURT:  Mr. Lucarelli, I'd like you now to tell me

24   in your own words what you did that makes you believe that you

25   are guilty of the crime charged in Count One of the

E90glucp

1   information.

2           THE DEFENDANT:  It's about one page or less.

3           Your Honor, I apologize to the Court for my decision

4   to trade on material nonpublic information.  While working at

5   LHA, I was granted access to the company server which sometimes

6   contained draft press releases for LHA clients.  I would

7   sometimes use the information contained in these draft press

8   releases to influence my decisions in my personal trading

9   activity.  I would buy stocks before the issuance of the final

10  press release and selling immediately thereafter.  Though I did

11  not give any of this information to anyone, I was aware that I

12  should not have used this information for my own personal

13  trading.

14          I was unhappy, along with some others, in my

15  employment with LHA.  As an independent contractor with no

16  signed employee agreements of any kind, I was not paid

17  commissions for approximately one year.  And I should have quit

18  and pursued another avenue, including a lawsuit, but, instead,

19  I began actively trading based on the PR information.

20          As I traded and working long hours, sometimes 14 to 16

21  hours a day, as I said before, plagued with serious medical

22  conditions Crohn's disease and anal fissures, where there's no

23  cures for these problems, I also never took vacations in the

24  two years that I was there or lavishly spent money.  The seized

25  brokerage accounts by the government also include my life

E90glucp

1   savings.

2          After trying every other prescribed drug from my

3   doctors since my surgery in 2004, at LHA, to work these hours,

4   I turned to cocaine.  The pain and the energy necessary to work

5   these long hours, but -- can I have some water?

6          THE COURT:  My deputy is going to go look for a cup.

7   We don't have it readily in the courtroom.  Why don't you take

8   your time, and if you want to wait until she comes back and

9   collect your thoughts, that's fine.

10          THE DEFENDANT:  But none of this excuses my gambling

11   addiction to day trading.  Fueled by anger of not getting paid

12   by my employer, physical pain and the dependence on the drugs,

13   I made a serious mistake for which I'm pleading guilty this

14   morning.

15          I've been in this business for 25 years and have never

16   run afoul of the criminal law.  As I traded actively, I do not

17   recall each trade that depended on material nonpublic

18   information as I did thousands of trades, but I do recall

19   trading all of these companies under these circumstances during

20   the periods alleged.

21          I mention these provocations to the Court not as a

22   justification but to indicate why I was tempted to stray from

23   best practices.  In my 25-year career, I wasn't strong enough

24   to resist.  I am remorseful and very sorry.  Thank you.

25          THE COURT:  Let me just follow up with a few

E90glucp

1    questions, and I should also say that obviously in connection

2    with sentencing, you would have an opportunity to speak to me

3    further and provide an explanation of your conduct and any

4    other context that you think would be helpful to me in deciding

5    a sentence.

6          For today's purposes, let me first ask you, did you

7    owe a duty to LHA not to trade on the information that you

8    obtained through your work there?

9          THE DEFENDANT:  Can you ask that again.

10         THE COURT:  Did you owe a duty to LHA not to trade on

11   the information that you obtained through your work at LHA?

12         THE DEFENDANT:  I'll answer that two ways:  The very

13   first client that I brought to LHA, which was a 10,000-a-month

14   client and LHA was paying me 10,000 a month as an independent

15   contractor, I was told I had to have that client to join the

16   firm; that client demanded that I own stock and wanted a copy

17   of my statement that said I owned stock because -- they used

18   the term "skin in the game."  And a lot of clients want you to

19   own stock.  If you're a signed employee, which I was not, you

20   can't because you've signed an agreement that you won't buy any

21   of the stock, so that's how I would answer that question.

22         But I do understand from my counsel that though I was

23   an independent contractor with no signed employee agreements,

24   there could have been a fiduciary obligation, even though the

25   clients asked me to buy stock.  And I told LHA with that first

E90glucp

1    client, you know, that he demanded I buy stock.

2            THE COURT:  Did you understand that you were not

3    allowed by LHA to trade on material nonpublic information that

4    you obtained by virtue of working there, whether as an employee

5    or an independent contractor?

6            Did you understand that?

7            THE DEFENDANT:  I guess my answer to that would be not

8    specifically because they received stock in cash -- I should

9    say stock and/or cash from clients that they signed.  So they

10   owned stock, the partners and some of the employees,

11   including -- some of finder's fees included, which I did not

12   receive, included stock in the clients that I signed.

13           THE COURT:  My understanding from a review of the

14   complaint in this matter is that LHA had a written Code of

15   Conduct that indicated that no one connected with LHA may

16   directly or indirectly trade in any security issued by a client

17   of LHA or engage in short sales of client securities or trade

18   in options and so forth; and that no one connected with LHA may

19   knowingly trade in the security of a nonclient with which a

20   client of LHA is known to be engaging in a confidential

21   transaction.

22           Are you aware of that?

23           THE DEFENDANT:  I was never given any of that

24   information; and like I said, the very first client I signed

25   demanded that I buy stock and own stock and wanted a copy of my

E90glucp

1   statement to show that.  And I told the firm that, and they

2   still hired me as an independent contractor.

3            THE COURT:  All right.

4            Mr. Williams, let me ask you, number one, is it

5   necessary that there be a factual predicate for a duty owed to

6   LHA not to trade on material nonpublic information; and number

7   two, to the extent that there is, do you have a proffer as to

8   what the government's proof on that would be?

9            MR. WILLIAMS:  Certainly, your Honor.  Yes, there does

10  need to be a factual predicate for that.

11           As to whether the defendant himself has to allocute

12  himself, the government believes it would be sufficient for us

13  to provide a proffer as to the fact that a duty was indeed owed

14  in light of LHA's policies that your Honor has just recounted

15  on the record.

16           Furthermore, the defendant's accessing of the servers

17  that he mentioned in his allocution demonstrate that he was

18  given access to confidential client information and accessed

19  those servers and used that client information without LHA's

20  prior consent or knowledge.

21           As to the government's proof on this point of breach,

22  your Honor, we would offer witness testimony with regard to

23  LHA's policies that Mr. Lucarelli, although he didn't himself

24  sign, was definitely made aware of and witnesses would make

25  that clear at trial.

E90glucp

1          Furthermore, your Honor, the defendant certainly owed

2    a duty as well to LHA clients who did not have knowledge that

3    Mr. Lucarelli was relying on material nonpublic information

4    contained in their draft press releases to trade.

5          THE COURT:  Let me ask you, I'm fully aware that the

6    question of whether a remote tippee, if you will, is aware that

7    material nonpublic information was obtained by virtue of a

8    breach of a duty is a live issue, shall we say.

9          I would imagine that insofar as we're not dealing with

10   a remote tippee here, but nevertheless, the same principle may

11   apply, but it may be necessary or it may later prove necessary

12   for Mr. Lucarelli to admit or the government to prove that he

13   was aware that his trades were in violation of a duty to LHA.

14          Do you have a view on that?

15          MR. WILLIAMS:  Your Honor, certainly we could prove

16   that; however, even if Mr. Lucarelli were not an employee of

17   LHA but were simply entering the office and stealing the draft

18   press releases, it would still be unlawful and it would still

19   be insider trading.

20          The government certainly has proof that Mr. Lucarelli,

21   as an employee of LHA or an independent contractor, owed a

22   duty, but it's also our belief that even absent that duty,

23   Mr. Lucarelli, if he's misappropriating the information, would

24   still be culpable of insider trading.

25          THE COURT:  Mr. McGinley, do you have a view on

E90glucp

1    this?

2           MR. MCGINLEY:  I would agree with that last statement

3    by Mr. Williams, and I believe Mr. Lucarelli will testify to

4    that, your Honor.

5           THE DEFENDANT:  Except for the stealing of material

6    nonpublic, you know, information.

7           THE COURT:  Let me put it this way:  I take it the

8    agreement, Mr. McGinley, would be that to the extent there's

9    a factual basis that Mr. Lucarelli misappropriated information

10   and traded on it, that that was TREX; is that correct?

11          MR. MCGINLEY:  That's correct.

12          THE COURT:  Mr. Lucarelli, do you acknowledge that the

13   material nonpublic information that you have referred to that

14   you obtained through these draft press releases, that

15   information, if you will, belonged to LHA and to its clients

16   and was not yours to trade on?

17          Is that a fair statement?

18          THE DEFENDANT:  I understand that.  I just -- I did

19   want to say one thing on that.  First I'll say yes; and then

20   after this arrest, I looked deeply into the laws of

21   materiality, which you know much more than me about, but

22   including the total mix, geopolitical events and many other

23   things that influence what a stock does.

24          Having said that, having never been writing press

25   releases at LHA, having never talked to any clients at LHA or

E90glucp

1   consulting with them, if I did come across a draft press

2   release, it could substantially change materially in the next

3   week or two because I would not be seeing -- the process of

4   press releases is, it doesn't become final until both parties,

5   the client and the writer, sign off on it; and then the final

6   procedure is, it goes to business lawyer, PR news lawyer for a

7   release date.  None of this I would be aware of.  I never

8   talked to any of the writers about any information.

9       So what I'm trying to say here is, yes, I did use in

10  my decisions sometimes material nonpublic information, usually

11  something I might see a week or two that might come out then or

12  it might be delayed or it might never come out.

13      But when you look at the laws of materiality as I

14  understand them, with the total mix and everything else, the

15  question is, was it probable that that would work or was it

16  merely possible?  And many times, if anyone looked at my

17  accounts, thousands of trades, I lost hundreds of thousands of

18  dollars as well.

19      So, I'm going to answer yes, I did trade on material

20  nonpublic information in my decision-making process, but as a

21  day trader using fundamental and mainly a chartist's day trader

22  technical analysis, I mean, the technical and fundamental

23  is -- it just depends, every trade was different, but I'll

24  answer yes to the question.

25      THE COURT:  Again, you'll have an opportunity in

E90glucp

1    connection with sentencing to provide a fuller explanation if
2    you'd like.

3              My task today is to determine and confirm that you are
4    pleading guilty because you are, in fact, guilty and also to
5    confirm that there is a factual basis for your guilty plea.
6    Beyond that, again, you'll have an opportunity to elaborate in
7    connection with sentencing.

8              Let me ask you a few other questions:  Number one, you
9    said that some of these trades were in the securities listed in
10   the information.  I take it that some of these trades, that is,
11   trades in which you used material nonpublic information, were
12   done in connection with, for example, the securities in TREX
13   Company Incorporated.

14             Is that correct?

15             THE DEFENDANT:  Yes.

16             THE COURT:  You said that was at or about the times
17   listed in the indictment.  Was that between the fall of 2013
18   and the summer of 2014?  In other words, did you trade on
19   material nonpublic information in securities of TREX at some
20   point in roughly that time period?

21             THE DEFENDANT:  Yes.  Although, the very last trade in
22   TREX that they had -- they put in the 13-count indictment they
23   had a copy of in a briefcase of mine, I'd like to -- I know I
24   can't see that copy now because I would have had to plead not
25   guilty, but I believe that that was not material based on

E90glucp

1    analyst's consensus and estimates for that earnings release, as

2    well as the guidance. I believe it was not material. And I

3    believe that I traded the opposite way of what the government

4    alleges in that, not just one time, but three times.

5              THE COURT: Well, the information lists various trades

6    in securities, some in connection with TREX, others in

7    connection with FAB Universal Corporation, others in connection

8    with PhotoMedex Incorporation and a few other entities as well.

9              Did you trade on material nonpublic information in

10   connection with the purchase or sale of any of those securities

11   between 2013 and 2014?

12             THE DEFENDANT: As I said before in my statement,

13   because of the physical pain and dependence on drugs and doing

14   thousands of trades, I can't remember which trades I might have

15   seen a draft press release of and whether that draft press

16   release was material, although it would have been nonpublic

17   information.

18             As I traded actively, I do not recall each trade that

19   depended on material nonpublic information, but I do recall

20   trading all of these companies under those

21   circumstances -- under circumstances during the periods

22   alleged.

23             THE COURT: Did these trades take place in Manhattan?

24             THE DEFENDANT: Manhattan; yes.

25             THE COURT: Mr. Williams, I think maybe what would

E90glucp

1   make sense is for me to ask you what the government's evidence
2   would be if the defendant were to go to trial; and, in
3   particular, if you could make a proffer with respect to what
4   evidence the government would or would introduce in connection
5   with showing that any one of these transactions was in
6   connection with the use of material nonpublic information,
7   perhaps that would do it.

8          MR. WILLIAMS:  Certainly, your Honor.

9          If this case were to proceed to trial, the government
10  would offer, among other things, trading records, draft press
11  releases, and forensic evidence showing Mr. Lucarelli's digital
12  trail into certain share directories at LHA that contained
13  material nonpublic information.

14         Furthermore, the government would call witnesses,
15  including law enforcement witnesses, who conducted a search·of
16  Mr. Lucarelli's office at LHA and who collected physical
17  evidence, including evidence reflecting his possession of
18  material nonpublic information.

19         Specifically, the evidence would also establish that
20  as a result of the 13 instances of insider trading specifically
21  set forth in the information, Lucarelli earned approximately
22  $538,000; and also there were approximately 18 additional
23  occasions during the course of the scheme in which he took
24  positions in client securities on the basis of inside
25  information and he earned approximately $955,000 in profits.

E90glucp

1          With regard to the specific instances of trading set

2    forth in the information, which are, again, illustrative but

3    not exclusive, the government would offer specific evidence

4    showing him accessing the draft press releases before taking a

5    position in a client security, which, of course, would be

6    trading in possession of material nonpublic information, your

7    Honor.

8          THE COURT:  Are there any additional questions that

9    you would like me to ask Mr. Lucarelli?

10          MR. WILLIAMS:  No, your Honor.

11          THE COURT:  Mr. McGinley, do you know of any valid

12    defense that would prevail at trial or do you know of any

13    reason Mr. Lucarelli should not be permitted to plead guilty?

14          MR. MCGINLEY:  I don't; otherwise, we wouldn't be here

15    today.

16          THE COURT:  Do you believe there are any additional

17    questions that I should ask of Mr. Lucarelli?

18          MR. MCGINLEY:  I don't.

19          THE DEFENDANT:  I have a question.

20          THE COURT:  Why don't you ask Mr. McGinley and then he

21    can either ask it or --

22          THE DEFENDANT:  I wanted to ask if I can respond very

23    briefly to what the --

24          THE COURT:  Why don't you speak briefly with

25    Mr. McGinley and then he can let me know.

E90glucp

```
 1              (Pause)
 2              THE DEFENDANT:  I have nothing to say.
 3              THE COURT:  All right.  Do both counsel agree that
 4     there is a sufficient factual basis for a guilty plea to Count
 5     One of the information?
 6              MR. WILLIAMS:  Yes, your Honor.
 7              MR. MCGINLEY:  Yes, your Honor.
 8              THE COURT:  Does either counsel know of any reason
 9     that I should not accept the defendant's plea of guilty?
10              MR. WILLIAMS:  No, your Honor.
11              MR. MCGINLEY:  No, your Honor.
12              THE COURT:  Mr. Lucarelli, because you acknowledge
13     that you are, in fact, guilty as charged in the information,
14     because I am satisfied that you know of your rights, including
15     your right to go to trial, and that you are aware of the
16     consequences of your plea, including the sentence that could be
17     imposed upon you, and because I find that you are knowingly and
18     voluntarily pleading guilty and because I find that there is a
19     sufficient factual predicate for a guilty plea, I accept your
20     guilty plea and enter a judgment of guilty on Count One of the
21     information.
22              The probation department will want to interview you in
23     connection with the presentence report that it will prepare
24     that I have mentioned.  If you choose to speak with the
25     probation department, it is essential that anything you say is
```

E90glucp

1    truthful and accurate.  Among other things, that report is

2    important to me in deciding what sentence to impose upon you,

3    and you and your lawyers will have an opportunity to review the

4    report in advance of sentencing.

5          In advance of sentencing, I would urge you to review

6    it with care.  If you find any mistakes in the report or

7    anything you wish to bring to my attention or anything in

8    connection with your sentencing, including, again, whatever

9    context you want to share with me regarding the crime charged

10   in Count One, share that with your lawyers so that they can

11   advise you on the best way to do so in the proper manner.

12          Understood?

13          THE DEFENDANT:  Yes.

14          THE COURT:  Mr. McGinley, do you wish to be present in

15   connection with any interview for the presentence report?

16          MR. MCGINLEY:  Yes, your Honor, I would.

17          THE COURT:  I'll order that no interview take place

18   unless counsel is present.

19          Sentencing will be set for January 8, 2015, at 3:30 in

20   the afternoon.  I direct the government to provide the

21   probation department with its factual statement of the offense

22   within seven days.

23          Defense counsel must arrange for the defendant to be

24   interviewed by the probation department within the next two

25   weeks.

E90glucp

1      Pursuant to my individual rules and practices for
2  criminal cases, which is available on the Court's website, the
3  defense submissions in connection with sentencing are due two
4  weeks prior to sentencing; the government's submission is due
5  one week prior to sentencing.  In the event that either party
6  does not intend to file a substantive sentencing submission, I
7  ask that you file on ECF a letter to that effect so that we
8  don't need to track you down.
9      Two last items of business:  Number one, I do have
10  here the consent preliminary order of forfeiture that appears
11  to have been signed by the defendant, as he confirmed earlier,
12  and by counsel, Mr. McGinley.
13      Mr. McGinley, is there any objection to my signing and
14  docketing that order?
15      MR. MCGINLEY:  No, your Honor.
16      THE COURT:  I will do so.
17      Mr. Williams, is there any objection to the present
18  bail conditions being continued through the date of sentencing?
19      MR. WILLIAMS:  No, your Honor.  No objection.
20      I'm not sure if this is necessary, but I don't know if
21  the defendant has to admit the forfeiture allegation given that
22  he has already signed the consent order of forfeiture, but he
23  has not yet admitted the allegation in the information.
24      THE COURT:  I'm not sure it is necessary insofar as he
25  admitted it in the plea agreement, and I confirmed that he

E90glucp

1   understood and knew that earlier.

2           But in any event, Mr. Lucarelli, do you admit to the

3   forfeiture allegations set forth in the information?

4           THE DEFENDANT:  Yes.

5           THE COURT:  You should understand that the conditions

6   upon which you have been released until today are going to

7   continue to apply through the date of your sentencing.  You

8   should also understand that any violation of those conditions

9   could have very serious consequences for you at the time of

10  sentencing.

11          Do you understand both of those things?

12          THE DEFENDANT:  Yes.

13          THE COURT:  You should also understand that you must

14  be in this courtroom on the date and time that I set for

15  sentencing or, in the event that that date and time changes, on

16  whatever date and time that I change it to.

17          If you are not here at that time, you should

18  understand that you may be prosecuted for a separate crime and

19  subject to punishment above and beyond whatever you receive in

20  connection with your plea.

21          Do you understand that?

22          THE DEFENDANT:  Yes.

23          THE COURT:  It is important that you stay in touch

24  with your lawyers to ensure that if the date and time does

25  change, that you are advised of when you must appear.

E90glucp

1    Understood?

2    THE DEFENDANT:  Yes.

3    MR. MCGINLEY:  On the bail conditions, I just wanted

4    to be certain that his bail conditions have been modified to

5    the extent that travel restrictions would allow him to go to

6    the district of North Dakota where he's going to live with his

7    brother until such time of sentencing.  I believe the U.S.

8    Attorney's Office has agreed to that.

9    THE COURT:  Mr. Williams.

10   MR. WILLIAMS:  We would have no objection to that,

11   your Honor.

12   THE COURT:  Right now, his travel conditions do not

13   allow that.  Is that correct?

14   MR. MCGINLEY:  I don't believe they include that; I

15   think they just have him in the Southern and Eastern Districts,

16   but of course, he has no ability to live here in the city

17   anymore.  He has no money.  His brother is going to allow him

18   to have a room out in his house in North Dakota, and pretrial

19   services has also approved it, your Honor.

20   THE COURT:  I will modify the conditions to permit the

21   defendant to travel to the district of North Dakota and travel

22   in between North Dakota and the Southern and Eastern Districts

23   of New York.

24   MR. MCGINLEY:  Thank you.

25   THE COURT:  Going forward, if there is any need for

41

E90glucp

1   modification of bail, you must consult with pretrial and the

2   government.  And it's better practice to put it in a letter

3   motion so there's a proper record of modifications, but bail is

4   so modified.

5           Anything further, Mr. Williams?

6           MR. WILLIAMS:  No, your Honor.

7           THE COURT:  Mr. McGinley.

8           MR. MCGINLEY:  No, your Honor.

9           THE COURT:  In that case, we are adjourned.  I wish

10  you all a pleasant day.

11          Thank you very much.

12          (Adjourned)

13

14

15

16

17

18

19

20

21

22

23

24

25